Honorable Ricardo S. Martinez

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 2:14-CR-00122-RSM |
| Plaintiff, | ***DEFENDANT'S SENTENCING*** |
| v. | ***MEMORANDUM*** |
| MUSAB MOHAMMED MASMARI, | |
| Defendant. | |

The Defendant, Musab Masmari, through counsel, respectfully submits this sentencing memorandum in connection with his sentencing by the Court on July 31, 2014, for the crime of Arson, in violation of 18 U.S.C. § 844(i). Mr. Masmari accepts full responsibility for his actions, and through this memorandum seeks to provide the Court with information pertinent to his sentencing under 18 USC § 3553.

I.  SENTENCING ANALYSIS

Under *United States v. Booker*, 543 U.S. 220 (2005), the Court is directed to impose a sentence under 18 U.S.C. § 3553(a). In compliance with 18 USC § 3553(a), the Court is to impose a sentence "sufficient, *but not greater than necessary*" to comply with the purposes of punishment. *See Kimbrough v. United States*, 552 U.S. 85, 111 (2007) ("sufficient, but not greater than

Sentencing Memorandum - 1

Swift & McDonald, P.S.
1809 7th Avenue, Suite 1108
Seattle, WA 98101
(206) 441-3377

necessary" requirement is the "overarching instruction" of § 3553(a)). In determining a sentence "sufficient, but not greater than necessary, a Court is to consider several factors, including (as relevant here) "the nature and circumstances of the offense and the history and characteristics of the defendant," *Id*. § 3553(a)(1); the guidelines sentencing range and any applicable Sentencing Commission policy statements, *Id.* § 3553(a)(4), (5); and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *Id.* § 3553(a)(6).

Based on the above criteria, the defendant respectfully submits that a sentence of no more than 60 months, as jointly recommended by his PTA, is sufficient, but not greater than necessary, in his case.

II.  SENTENCING FACTORS UNDER 18 USC § 3553(a)

a. History and Characteristics of the Defendant

Mr. Masmari (age 31) was born in Los Angeles, California, while his father Mohamed Masmari, who was accompanied by his mother (Samir Al Goud), was attending film school in Southern California.  Although his father and mother were Libyan citizens, Mr. Masmari obtained US citizenship by virtue of his birth in the United States.  Mr. Masmari has two older sisters, Ms. Miaz Masmari, (age 35), and Ms. Maram Masmari (age 33).  Both sisters are also U.S. citizens based on their birth in the United States during their father's time in film school. Shortly after Mr. Masmari's birth, the family moved back to Libya. After moving back to Libya, Mr. Masamri's father was unable to find regular work as a film director and producer because of his unwillingness to adhere to the propaganda restrictions imposed by the Gaddafi government. Despite his lack of income, the family

was able to maintain semblance of the middle-class lifestyle and Mr. Masmari was able to receive a western education through high school. Mr. Masmari graduated from high school in Tripoli in 2000 and thereafter attended college for two years. Following school, he worked in a bank in Tripoli.

In 2008, Mr. Masmari decided to use his US citizenship to come to the United States in hopes of better economic opportunities. He chose to come to Washington State because his sister and brother-in-law were attending school and living in Lynnwood, Washington, studying English in order to qualify to practice dentistry. From approximately 2009 to 2010, Mr. Masmari attended English courses, and, after his sister and her husband relocated to New York State to begin their dental practice, worked as a delivery driver.

In 2011, Mr. Masmari began to drinking excessively. Despite his drinking and increasingly frequent use of marijuana, he was able to maintain a residence by working short-term, low paying jobs, and occasionally getting financial help from his family. Beginning with an incident outside of the Neighbours Nightclub where he got into an altercation due to lewd comments made to a female pedestrian while intoxicated, Mr. Masmari's life began to deteriorate. The altercation outside of Neighbours was followed a series of misdemeanors, many of which, if not all, involved alcohol. In addition to minor criminal altercations, Mr. Masmari was unable to hold a job for any period of time and was evicted from his apartment. He became homeless in the late December of 2013. By December of 2013, Mr. Masmari was living in his car and his alcohol abuse had reached the point where he was becoming intoxicated whenever he had the funds for alcohol.

   b. <u>The Events Giving Rise to the Offense Conduct</u>

On December 31, 2013, Mr. Masmari voluntarily became heavily intoxicated. While

Sentencing Memorandum - 3                               Swift & McDonald, P.S.
                                                     1809 7th Avenue, Suite 1108
                                                     Seattle, WA 98101
                                                     (206) 441-3377

intoxicated, Mr. Masmari took a can of gasoline[1] to the Neighbours Nightclub.  Due to his intoxicated state, Mr. Masmari is unsure of why he took the gasoline to Neighbours.[2]  Mr. Masmari, however, fully admits that after being admitted into Neighbours, he doused a stairway that went from the main floor of the nightclub up to a balcony, with gasoline and lit it on fire.  At the time of the fire there were approximately 750 people present.  None of the persons present, however, were injured, and the nightclub only suffered minor damage as the fire was doused almost immediately.

      c. <u>The Guidelines Sentencing Range</u>

Mr. Masmari agrees with the government and U.S. Probation Office that the base offense level for the instant offense is found under USSG § 2K1.4.   USSG § 2K1.4 provides that where the offense involves "a substantial risk of death or serious bodily injury that was created knowingly", the base offense level is 24.  Mr. Masmari further submits that his timely plea and acceptance of responsibility, qualifies him for a three level downward adjustment under USSG § 3E1.1(a) and (b), resulting in a total offense level of 21.  Mr. Masmari also agrees that he has a criminal history category of I.  The guideline imprisonment range for a criminal history of I with an offense level of 21, would ordinarily be 37 to 46 months. Mr. Masmari, however, agrees with his Pre-Sentencing Report that because his offense carries a statutorily required mandatory minimum of five years, under USSG § 5G1.1(b), the guideline term of imprisonment is likewise 60 months.

---

[1] Mr. Masmari had previously purchased the gasoline with the intent of using it to get the car he was living running so that he could stay warm.

[2] During his plea, Mr. Musmari acknowledged his guilt, based not only on his review of the evidence, but on also on the clear conviction that he was guilty.  Mr. .Masmari's assertion of an alcoholic blackout does not undermine the knowing and voluntary nature of his admissions and acceptance of responsibility.  See *United States v. Vidal,* 561 F.3d 1113, 1119 (10th Cir. N.M. 2009)**,** **(**wherein the Tenth Circuit analogized such circumstances as similar to an Alford plea and noted that federal courts would be in a difficult position if every plea where the defendant was drunk at the time of the offense was subject to attack based on knowingness and voluntariness.)  In Mr. Masmari's case his admission is stronger than an Alford plea because unlike *Vidal*, Mr. Masmari's does not dispute that despite intoxication he had the requisite intent to set the fire.

Sentencing Memorandum - 4       Swift & McDonald, P.S.
1809 7th Avenue, Suite 1108
Seattle, WA 98101
(206) 441-3377

    d. <u>Unwarranted Sentence Disparities</u>

Although this is a fairly unique crime, in some respects the principle of unwarranted disparities applies to Mr. Masmari's case. Mr. Masmari was initially arrested on February 1, 2014, and held in the King County Jail on a charge of First Degree Arson under RCW 9A.48.020, in King County Superior Court, Case No. 14-1-00461-0 SEA.  Arson 1 is a Class A Felony and a Violent Offense under RCW 9.94A.030(54), permitting a sentence of up to life in prison under certain circumstances. The mandatory guidelines sentence, however, for an individual like Mr. Masmari, with no prior felony history and an offender score of "0", is 21 to 27 months.  (Washington State Adult Sentencing Guidelines Manual, RCW 9.94A.510).

Mr. Masmari was willing to enter a plea to the charged conduct in King County**.** The King County Prosecutors Office, however, was unwilling to accept a plea from Mr. Masmari unless he agreed to an "exceptional up" based on risk of harm to the patrons and a hate crime motive, thereby permitting the sentencing judge to enter a sentence above the sentencing guidelines of up to life imprisonment at his or her discretion. The King County Prosecutor's Office further indicated to counsel that if Mr. Masmari was unwilling to agree to the exceptional up, rather than attempt to prove the aggravating circumstances necessary to permit a sentence above the guidelines, the office would drop the case in favor of federal prosecution. When Mr. Masmari refused to agree to an exceptional up sentence, federal prosecution was initiated.  Prior to initiation the federal prosecution, undersign counsel spoke with the US Attorney's Office regarding the charges and formed agreement with Mr. Masmari's consent to plead guilty to the information in this case.

The difference in the guidelines ranges between the Washington State and Federal sentencing guidelines is reconcilable particularly because the Washington State guidelines do not include an

Sentencing Memorandum - 5

Swift & McDonald, P.S.
1809 7th Avenue, Suite 1108
Seattle, WA 98101
(206) 441-3377

enhancement for risk of harm. A further disparity between the two systems, because of the mandatory minimum, is less reconcilable but nevertheless required by statute. To go beyond the mandatory minimum, however, creates an unwarranted disparity in the handling of Mr. Massari's case and other similar crimes of arson chargeable in this district. A sentence above the mandatory minimum would only encourage future prosecutions to engage in forum shopping - not based on the crime but rather the identity of the victim and the identity of the defendant.

### III.   THE DEFENDANT'S SENTENCING RECOMMENDATION

#### a. A Term  60 Months Confinement

Pursuant to his plea agreement, Mr. Masmari agrees with the government and US Probation's recommendation that a sentence of 60 months confinement is appropriate. Mr. Masmari, does however, disagree with the government that, apart from the mandatory minimum, his sentence would warrant an upward variance from the guidelines recommendation of 37 to 46 months based on the risk of harm and a possible hate crime motivation. [3]

The risk of harm to the patrons of Neighbours is considered under the base offense. Admittedly, the court may vary from the guidelines range where, in the Court's judgment the guidelines do not adequately cover the conduct. See *United States v. Christensen*, 732 F.3d 1094 (9th Cir. Cal. 2013) (affirming the Trial Court's determination that the base level for loss in an investor fraud case was insufficient to account for the actual harm, and holding that "[t]he Supreme Court's decision in *United States v. Booker* implicitly rejected the position that no additional weight could be given to factors included in calculating the applicable advisory Guidelines range, since to do

---

[3] Although the government complies with the terms of the Plea Agreement in this case by recommending a sentence of 60 months, the defense is concerned that the government's argued rational for a variance may be considered as a suggested rationale for a sentence greater than 60 months of confinement suggested by Guidelines under USSG §5G1.1.

Sentencing Memorandum - 6

Swift & McDonald, P.S.
1809 7th Avenue, Suite 1108
Seattle, WA 98101
(206) 441-3377

otherwise would essentially render the Guidelines mandatory." (internal cites omitted) at 1101). While setting fire in a night club by its very nature creates a substantial risk of harm, the actual risk created by Mr. Masmari's actions does not fall outside the heartland of the Guidelines. Mr. Masmari set the fire in an area where it was easily discovered and extinguished. The actual risk as demonstrated by the ease with which the potential harm suffered was averted, does not place Mr. Masmari's conduct outside the heartland, despite the large number of persons present.

The second reason suggested by the government for a variance is the possible motive of a hate crime. Hate crime is a factor that is also accounted for by the guidelines under USSG § 3A1.1. Under USSG § 3A1.1, in applicable part, offense conduct is to be increased by three levels if the Court at sentencing determines beyond a reasonable doubt that the defendant's selection of a victim or property was due to sexual orientation. The government in its sentencing memorandum agrees that that the offense calculation should not include a hate crime victim related enhancement. Presumably the government's agreement is based on a belief that there is insufficient evidence to meet the beyond a reasonable doubt standard.

The government nevertheless suggests that a hate crime motivation should be used as a basis for variation. The defense respectfully suggests that such an approach would be an abuse of discretion, whereby the Court would in essence lower the required evidentiary burden in applying punishment for a hate crime motivation.

The defense recognizes that the Court has independent fact finding powers with respect to the factors set out in the guidelines and is not required to abide by government's apparent decision not to seek an evidentiary hearing regarding Mr. Masmari's motivation and may, sua sponte, choose to hold such a hearing.

Sentencing Memorandum - 7

Swift & McDonald, P.S.
1809 7th Avenue, Suite 1108
Seattle, WA 98101
(206) 441-3377

Mr. Masmari, however, respectfully asserts that the state of the evidence does not warrant such a hearing. The principle evidence is Mr. Masmari's alleged statement after the fact to an unidentified witness. Absent the government producing the witness, the alleged statement of an unidentified witness is insufficient to warrant a hearing because the evidence in the form of an unidentified witness is facially insufficient to meet the threshold required to apply the USSG § 3A1.1 enhancement. See *United States v. Hurlich*, 293 F.3d 1223 (10th Cir. Utah 2002) (remanding for resentencing because the U.S. Sentencing Guidelines Manual where the enhancement § 2K2.1(b)(5) for possession of fire arm while in commission of a felony was supported only by a vague, unsworn presentence report statement.) The standard for § 2K2.1(b)(5) is probable cause, as such the observations of the *Hurlich* Court takes on greater weight in the present case where the enhancement requires proof beyond a reasonable doubt.

Finally, the defense notes that even if a hate crime could be established beyond a reasonable doubt, a three point enhancement to Mr. Masmari's case results in a total offense level of 24 with a Guidelines range of 51 to 63 months, and that the mandatory minimum stands at the high-end of this guidelines range.

Mr. Masmari does not agree that his criminal conduct was fueled by hate. He does, however, agree with the government that his conduct was fueled by substance-abuse, and in particular alcoholism. He is amenable to, and will accept, treatment if offered.

  b. <u>No Fine Should Be Imposed</u>

The defendant respectfully submits that under the factors set out in § 3572, a fine is not appropriate in his case. The factors under § 3572(a) on whether to impose a fine and the magnitude include the defendant's income, earning capacity, and financial resources; the burden that the fine will impose on

Sentencing Memorandum - 8                   Swift & McDonald, P.S.
1809 7th Avenue, Suite 1108
Seattle, WA 98101
(206) 441-3377

the defendant or any dependents; any loss to victims of the offense; whether restitution has been ordered; the need to deprive the defendant of illegally obtained gains; and the costs to the government of incarceration. 18 U.S.C. § 3572(a).

In Mr. Masmari's case, the criminal conduct involved some level of financial loss to Neighbours in the form of lost revenue and damages. Regardless of the actual amount, however, Mr. Masmari has no present ability to pay. He possesses no assets, has no current income, and has no real prospects of more than subsistence income upon release. Additionally, apart from a fine, 18 U.S.C. § 3663A and USSG §5E1.1 require that restitution in an amount to be determined by the Court to be ordered. The amount of loss, however, is not set out in either the probation report or government's sentencing memorandum. Under these circumstances the defense respectfully recommends the Court awarded no fine, and restitution in the amount of $1,000.

DATED this 24th day of July, 2014

Respectfully submitted,

By: */s/ Charles Swift*
Charles D. Swift
Attorney for Defendant,
SWIFT & MCDONALD, P.S.
1809 Seventh Avenue, Suite 1108
Seattle, WA 98101
Office: (206) 441-3377
cswift@prolegaldefense.com

Jeffrey D. Cohen
Attorney for Defendant
1325 Fourth Ave, Suite 1402
Seattle, WA  98101
Office:  (206) 624-9690
jdc@jdcohenlaw.com

# CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this foregoing Defendant's Sentencing Memorandum was electronically filed and served on the persons listed below by CM/ECF and e-mail:

TODD GREENBERG
Assistant United States Attorney
Western District of Washington
700 - Stewart Street, Suite 5220
Seattle, WA  98101


DATED this 24th day of July, 2014.


    /s/ Charles D. Swift
Charles D. Swift
Counsel for   Musab Musmari
cswift@prolegaldefense.com
Swift & McDonald, P.S.
1809 Seventh Avenue, Suite 1108
Seattle, WA 98101
Tel: (206) 441-3377
Fax: (206) 224-9908